TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
LANA MORTON OWENS (Cal. Bar No. 233831)
MATTHEW J. TAKO (Cal. Bar No. 307013)
Assistant United States Attorney
Transnational Organized Crime Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3547/0705
Facsimile: (213) 894-0141
E-mail: lana.owens@usdoj.gov
matthew.tako@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YURIANA JULIA PELAEZ CALDERON et al.,<br><br>Defendants. | No. 2:26-CR-00135-SVW<br><br>PLEA AGREEMENT FOR DEFENDANT YURIANA JULIA PELAEZ CALDERON |

1. This constitutes the plea agreement between YURIANA JULIA PELAEZ CALDERON, also known as "Yuli," ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One of the indictment in United States v. YURIANA JULIA PELAEZ CALDERON, CR No. 2:26-00135-SVW-1, which charges defendant with Conspiracy to Impede, Obstruct, Impair, and Defeat the Lawful Function of Homeland Security Investigations Within Federal Jurisdiction, in violation of 18 U.S.C. § 371.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. At or before sentencing, pay full restitution to Homeland Security Investigations. The parties agree, that the government will establish restitution at the sentencing hearing.

h. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i. Not seek a sentence below six months in custody, provided defendant receives credit for time served in immigration custody. The parties understand that credit for that custodial period

may take the form of a downward adjustment pursuant to U.S.S.G. § 5G1.3(b). Defendant agrees that she will not rely on or otherwise use this recommendation in support of any arguments made against the government during any appellate proceedings, any further proceedings in the district court, or to claim a concession, estoppel, or otherwise.

3. Defendant and the USAO agree that defendant's entry of a guilty plea pursuant to paragraph 2(a) above will be conditional, in that defendant reserves the right, on appeal from the judgment, to seek review of: (1) the adverse determination of defendant's motion to suppress statements at docket number 28 (order at docket 53); and (2) the adverse determination of defendant's motion to dismiss case at docket number 38 (order at docket 49). If defendant prevails on appeal, defendant will be allowed to withdraw defendant's guilty plea.

THE USAO'S OBLIGATIONS

4. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e. Recommend that defendant be sentenced to 6 months imprisonment.

f. Recommend that defendant receive credit for the time served while defendant was in Immigration and Customs Enforcement custody, such that defendant's term of imprisonment would amount to time served. The parties understand that credit for that custodial period may take the form of a downward adjustment pursuant to U.S.S.G. § 5G1.3(b).

## NATURE OF THE OFFENSE

5. Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy to Impede, Obstruct, Impair, and Defeat the Lawful Function of Homeland Security Investigations Within Federal Jurisdiction, in violation of 18 U.S.C. § 371, the following must be true: (1) Beginning on or before June 25, 2025, and ending on or about July 5, 2025, there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of the Department of Homeland Security, Homeland Security Investigations, by deceitful or dishonest means as charged in the indictment (or the crime charged in the indictment); (2) Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and; (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

PENALTIES AND RESTITUTION

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9. Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

10. Defendant understands that defendant will be required to pay full restitution to the victim of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that

victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

## FACTUAL BASIS

11. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

The United States Department of Homeland Security ("DHS") is a United States Government Agency. DHS Homeland Security Investigations ("HSI") was engaged in carrying out lawful governmental functions -- specifically, investigating potential violations of federal law. A function of HSI was to investigate credible threats to public safety, including reports of kidnappings where federal agents were alleged perpetrators. Allegations that an individual had been kidnapped were material to HSI's mission, because it triggered urgent investigative activity, coordination with other federal and state agencies, and allocation of federal resources.

Beginning on a date unknown, but no later than on or about June 25, 2025, and continuing to on or about July 29, 2025, in Los Angeles County, within the Central District of California, and elsewhere,

defendant and others known and unknown, conspired with each other to defraud the United States and agencies thereof, including DHS and HSI, by knowingly obstructing the lawful governmental functions of DHS by deceitful and dishonest means.

To carry out the conspiracy, defendant and others known and unknown faked defendant's apprehension by federal agents or surrogates acting on behalf of federal agents.

On June 25, 2025, defendant falsely told Individual 1 that "immigration" was taking her while in or near a Jack in the Box restaurant on Alameda Street, in Los Angeles, California ("Jack in the Box") and that immigration had "turned the lights on," "threatened to break her window" and were taking her into custody. Defendant told Individual 1 to wait an hour before reporting the incident. Shortly after faking her abduction, defendant and a co-conspirator drove to Bakersfield, California.

On June 27, 2025, defendant called Individual 2, who is an employee of a tenant-rights organization, using the *67 feature to block her caller identification and falsely claimed that she had been taken by masked "authorities" to San Ysidro where defendant - and others - were pressured to sign voluntary removal documents.

On June 27, 2025, defendant called Individual 3, called an employee of a non-profit community organization, using the *67 feature to block her caller identification, and falsely claimed that she had been moved to a warehouse in an unknown location where she was being held with other detainees.

On June 28, 2025, defendant called Individual 2, using the *67 feature to block her caller identification, and told Individual 2 that she was being held with someone from "B-18" (an immigration

facility in Los Angeles) and another person who had been "picked up at a gas station in Bakersfield."

As result of defendant's false representations, false information was reported to the media and law enforcement that defendant had been "kidnapped" by masked men in plain clothes driving an unmarked vehicle, who were acting as federal agents or as surrogates of federal agents. Defendant intended this result. On June 30, 2025, in Los Angeles, California, community organizers, held a press conference where other individuals repeated defendant's false claims and demanded defendant's "release" from custody. Defendant knew, or had reason to know, about the false press coverage and continued to stay hidden in Bakersfield, California.

On July 3, 2025, defendant called Individual 2, using the *67 feature to block her caller identification, and falsely claimed that she would be released soon because of all the media attention. That same day, defendant traveled from Bakersfield to Earlimart to stage her being released from custody. Defendant then approached an individual ("T.S.") in Earlimart and falsely told T.S. that she had just been dropped off by the "Border Patrol." Defendant then asked T.S. if T.S. would be a witness in her "case" against the "Border Patrol," because defendant was going to sue the agency. Defendant also altered her appearance to make it appear as if she had been mistreated while in custody, and a co-conspirator then took pictures of defendant's altered appearance.

From July 3, 2025, through July 5, 2025, defendant turned off her phones, and/or refused to return the phone calls of law enforcement officials, and caused others to do the same, when defendant knew that law enforcement was looking for her. Defendant

knew, or had reason to believe, that law enforcement would expend resources looking for defendant due to her false kidnapping claims.

## SENTENCING FACTORS

12. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

Except as set forth in paragraphs 2 and 4 above, defendant and the USAO have no agreement as to the applicable Sentencing Guidelines factors.

## WAIVER OF CONSTITUTIONAL RIGHTS

13. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF VENUE

14. Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offense to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offense to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

WAIVER OF APPEAL OF CONVICTION

15. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

16. Defendant agrees that, provided the Court imposes a total sentence on all counts of conviction of no more than six months imprisonment, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $16,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court.

17. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and

(b) the Court imposes a sentence of no less than six months imprisonment, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $16,000.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

18. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible. Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept her guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that her waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

19. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a

claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

20. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

21. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously

entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

23. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the

Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

26. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States
Attorney

[signature] 9-29-2026

LANA MORTON OWENS
MATTHEW J. TAKO
Assistant United States Attorney
Date

[signature] 9-29-26.

YURIANA JULIA PELAEZ CALDERON
Defendant
Date

[signature] 9-29-26

KYRA KRISTINE NICKELL
Deputy Federal Public Defender
Attorney for Defendant
YURIANA JULIA PELAEZ CALDERON
Date

## CERTIFICATION OF DEFENDANT

This agreement has been read to me in Spanish, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

Yuriana Julia Pelaez C ________ 09-29-26.
YURIANA JULIA PELAEZ CALDERON
Defendant
Date

## CERTIFICATION OF INTERPRETER

I, [Carina Arriola], am fluent in the written and spoken English and Spanish languages. I accurately translated this entire agreement from English into Spanish to defendant YURIANA JULIA PELAEZ CALDERON on this date.

Carina ________ 9/29/26
INTERPRETER
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am YURIANA JULIA PELAEZ CALDERON's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

Kyra Nickell — 9-29-26

KYRA KRISTINE NICKELL — Date
Deputy Federal Public Defender
Attorney for Defendant
YURIANA JULIA PELAEZ CALDERON